IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| GERALD WILSON | : | CIVIL ACTION |
| v. | : | |
| MICHAEL J. ASTRUE,[1] COMMISSIONER OF SOCIAL SECURITY | : | NO. 07-cv-0019 |

## MEMORANDUM RE: SOCIAL SECURITY

**Baylson, J.**                                                                                           November 28, 2007

Plaintiff, Gerald T. Wilson ("Wilson," "Plaintiff") seeks judicial review of the decision of the Commissioner of the Social Security Administration ("Commissioner," "Defendant") denying his application under the Social Security Disability ("SSD") and Supplemental Security Income ("SSI") disability programs under the Social Security Act ("the Act"), 42 U.S.C. §§ 1381-1383(c). Jurisdiction is established under § 405(g) of the Act. For the reasons that follow, the court will grant Plaintiff's motion, and remand for further proceedings in accordance with this opinion.

---

[1] On February 12, 2007, Michael J. Astrue became the Commissioner of Social Security. Pursuant to Rule 25(d)(1) of the Federal Rules of Civil Procedure, Michael J. Astrue is automatically substituted for former Commissioner Jo Anne B. Barnhart as the defendant in this suit.

I.  **Background and Procedural History**

   A.   <u>Procedural History</u>

Plaintiff is a 41 year-old man with a high-school education and able to communicate in English. (R. 25). Under the Commissioner's regulations, Plaintiff is classified as a "younger individual."[2] 20 CFR 404.1563 and 416.963.

On August 24, 2004, Plaintiff was at his job as a cook at a bar and grill in Philadelphia, Pennsylvania. (R. 305). As he was helping his boss unload boxes from a truck, Plaintiff slipped and fell inside the restaurant. (R. 307-308). As a result of this fall, Plaintiff sustained multiple injuries.

Plaintiff protectively filed an application for SSD and SSI benefits on October 12, 2004. (R. 54-56, 281-283). These applications were initially denied on February 2, 2005. (R. 33-37, 285-289). Plaintiff then filed a timely request for a hearing by an Administrative Law Judge. (R. 38). On January 19, 2006, a hearing was held before Administrative Law Judge Christine McCafferty ("ALJ"). (R. 297-342). At that hearing, the ALJ heard testimony from Plaintiff, as well as from Gary Young, an independent vocational expert. (R. 17).

In her decision on May 22, 2006, the ALJ found that Plaintiff was not disabled. (R. 15-26). Specifically, the ALJ found that the Plaintiff does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR. Part 404, Subpart P, Appendix 1. 20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.92(6). (R. 20). The ALJ concluded that while he is unable to perform any past relevant work,

---

[2] The Court must "cautiously scrutinize the employment prospects of so young an individual before placing him on the disability rolls." McLamore v. Weinberger, 530 F.2d 572, 574 (4th Cir. 1976).

Plaintiff has residual functional capacity to perform a narrowed range of sedentary work; such occupations could include an assembler, an inspector and a cashier. (R. 20-25).

Plaintiff filed a timely appeal with the Appeals Counsel (R. 14). The Appeals Council affirmed the decision of the ALJ. (R. 7-10). Plaintiff filed a complaint in this Court seeking judicial review of the Commissioner's decision on January 3, 2007.

B.     History of Injury and Treatment

Plaintiff testified that he went to the emergency room at Germantown Hospital the day after his injury. (R. 309). No records from this visit exist in the Record, although the visit is referenced in other doctors' reports as part of Plaintiff's Medical History. (R. 84, 94, 241, 257).

On September 9, 2004, Plaintiff visited the Chestnut Hill Emergency Department. Dr. Jeffrey George, M.D. wrote that Plaintiff had swelling and tenderness of the right lateral foot. Plaintiff had a normal knee exam, no tenderness, effusion or swelling, and was able to bear weight and ambulate with minimal difficulty. Dr. George told him to take Tylenol ever four hours for the pain. (R. 84-85). X-rays of Plaintiff's right foot revealed no fracture or dislocation. (R. 89).

In a September 29, 2004 visit to his treating physician Dr. Michael R. McCoy, M.D., Dr. McCoy noted that due to his fall at work, Plaintiff suffered from cervical sprain and strain, thoracic sprain and strain, lumbar sprain and strain, right knee sprain and strain, left shoulder sprain and strain, and myospasm/myofascitis. (R. 95). Dr. McCoy ordered further diagnostic tests, such as MRIs of the lumbar spine, cervical spine, and right knee, as well as an EMG of Plaintiff's lower extremities. (R. 125-127, R. 234-239).

On a January 9, 2005 visit to Dr. Daphne G. Golding, M.D., Dr. Golding concluded that Plaintiff suffered from right knee internal derangement, spinal strain and sprain and post-

traumatic cephalgia with occipital neuritis. She ruled out ligamentous instability and cervical and lumbar disc disease. (R. 243). Dr. Golding called for x-ray and MRI reports and records from Dr. McCoy, and stated her prognosis for a full recovery for Plaintiff was "guarded." Id.

A residual functional capacity assessment dated February 1, 2005 states that Plaintiff could occasionally lift and/or carry up to 20 pounds, but frequently lift or carry only ten pounds. Plaintiff was assessed as being able to stand and/or walk at least 2 hours in an 8-hour workday, and sit about 6 hours in an 8-hour workday. (R. 128-136).

In his Medical Source Statement of Functional Abilities and Limitations, Dr. McCoy stated Plaintiff's prognosis was "guarded." Dr. McCoy stated that Plaintiff's impairments could be expected to last at least twelve months, and that he was not a malingerer. Dr. McCoy said that Plaintiff "often" experienced pain or other symptoms severe enough to interfere with attention and concentration. The doctor wrote that Plaintiff would walk two city blocks without rest, could continuously sit for 20 minutes at a time and stand for 15 minutes at a time. Plaintiff was believed to be able to sit for less than two hours and stand/walk for less than two hours in an eight hour working day with normal breaks. Dr. McCoy believed that Plaintiff would need a job which permitted shifting positions at will from sitting, standing or walking, and that he would need ten breaks during an eight hour working day, and would need to take fifteen 10 minute walks during an eight hour working day. Dr. McCoy estimated that Plaintiff's impairments would cause him to miss work more than three times per month. (R. 136-140).

Plaintiff also visited Dr. Todd M. Kelman, D.O.. Dr. Kelman found Plaintiff to suffer from cervical and lumbar strain and sprain with probable right cervical radiculopathy and trapezius myofascitis, as well as synovitis, right knee, with internal derangement, noting a

probable meniscal tear. (R. 259). Dr. Kelman noted that if conservative treatment - including strengthening exercises and cortisone injections - failed to help Plaintiff, Plaintiff may require diagnostic arthroscopy and possible partial meniscectomy. Id. Plaintiff saw Dr. Kelman on multiple follow-up visits. Dr. Kelman noted clicking and popping in Plaintiff's right knee, accompanied by mild pain. Dr. Kelman gave him an injection with Xylocaine and 80 mg of Depo-Medrol. In later visits, Plaintiff related that the injection had helped but that he still experienced soreness. (R. 261).

Plaintiff received epidural injections in his leg, and he was also given a lumbar fluoroscopic facet block. While the injections provided a "tremendous amount of relief" from the pain, Plaintiff told one of his doctors that he still had a significant amount of low back pain. (R. 227). On August 9, 2005, Plaintiff underwent a procedure of posterior lumbar spinal joint radiofluoroscopic steroid block of the L3-4, L4-5 and L5-S1 facet joints bilaterally. The procedure was "well tolerated and uneventful." (R. 229). Plaintiff suffers from blurred vision, which Dr. Peter Savino concluded had "nothing to do with anything other than presbyopia." (R. 256).

A neurological examination with Dr. Anahid Kabasakalian, M.D., showed Plaintiff's speech and language to be intact. On the motor exam, Plaintiff demonstrated mild proximal weakness in all extremities. His gait was within normal limits and he is able to do deep knee bends. On the Romberg exam, Plaintiff was unsteady but did not fall. (R. 271). Plaintiff was diagnosed with post-traumatic migraine with blurry vision and ataxic episodes. Plaintiff also described headaches that occurred episodically and lasted for several days at a time, all day long.

Id. Plaintiff had a normal brain MRI and a mildly abnormal EEG due to subtle left temporal theta elicited by hyperventilation. (R. 274-275).

On a December 5, 2005 visit to a psychiatrist, Plaintiff was diagnosed with symptoms of insomnia, increased/decreased appetite, pain, anxiety, anger, irritability, difficulty concentrating, crying/sadness and hopelessness. (R. 266). The doctor recommended individual therapy, group therapy, and medication management. (R. 269).

## II.     Parties' Contentions

Plaintiff contends that the ALJ committed reversible error by rejecting the opinion of his treating physician, Dr. McCoy. Plaintiff argues that Dr. McCoy's opinion was well-supported by other evidence in the record and thus should have been given controlling weight. Plaintiff further contends that the ALJ's rejection of Plaintiff's subjective testimony contravenes social security regulations and that a finding of disability was appropriate.

In its response, the Commissioner contends that Dr. McCoy's medical source statement was unsupported by the record and entitled to little weight by the ALJ. The Commissioner further argues that the ALJ is given great discretion in determining whether a claimant's testimony regarding his limitations is credible, and thus the ALJ's denial of disability benefits and supplemental security income should be affirmed.

## III.    Legal Standard

The standard of review of an ALJ's decision is plenary for all legal issues. See Schaudeck v. Comm'r of Soc. Sec., 181 F.3d 429, 431 (3d Cir. 1999). The scope of the review of determinations of fact, however, is limited to determining whether or not substantial evidence exists in the record to support the Commissioner's decision. See Rutherford v. Barnhart, 399 F.3d

546, 552 (3d Cir. 2005). As such, "[t]he Court is bound by the ALJ's finding of fact if they are supported by substantial evidence in the record." Plummer v. Apfel, 186 F.3d 422, 427 (3d Cir. 1999); see also Monsour Med. Ctr. v. Heckler, 806 F.2d 1185, 1191 (3d Cir. 1986) (holding if "an agency's fact finding is supported by substantial evidence, reviewing courts lack power to reverse . . . those findings"). The Court must not "weigh the evidence or substitute [its own] conclusions for those of the fact-finder." Rutherford, 399 F.3d at 552 (quoting Williams v. Sullivan, 970 F.2d 1178, 1182 (3d Cir. 1992)). "Substantial evidence does not mean a large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Hartranft v. Apfel, 181 F.3d 358, 360 (3d Cir. 1999) (internal quotation omitted).

The Social Security Act provides for judicial review of any "final decision of the Commissioner of Social Security" in a disability proceeding. 42 U.S.C. § 405(g). The district court may enter a judgment "affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." Id. However, the Commissioner's findings "as to any fact, if supported by substantial evidence, shall be conclusive." Id. (emphasis added). Accordingly, this Court's scope of review is "limited to determining whether the Commissioner applied the correct legal standards and whether the record, as a whole, contains substantial evidence to support the Commissioner's findings of fact." Schwartz v. Halter, 134 F. Supp. 2d 640, 647 (E.D. Pa. 2001).

In order to establish a disability under the Social Security Act, a claimant must demonstrate that she suffers from a mental or physical impairment that prevents her from

engaging in substantial gainful activity for a period of at least twelve months. 42 U.S.C. § 423(d); Stunkard v. Sec'y of HHS, 841 F.2d 57, 59 (3d Cir. 1988).

## IV.     Discussion

Under 20 C.F.R. 404.1520, 416.920 (2006), there is a five-step sequential evaluation process to determine whether a person is disabled. Ramirez v. Barnhart, 372 F.3d 546, 550-51 (3d Cir. 2004). The fact-finder must determine: (1) if the claimant currently is engaged in substantial gainful employment; (2) if not, whether the claimant suffers from a "severe impairment;" (3) if the claimant has a "severe impairment," whether that impairment meets or equals those listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, and thus is presumed to be severe enough to preclude gainful work; (4) whether the claimant can still perform work he or she has done in the past ("past relevant work") despite the severe impairment; and (5) if not, whether the claimant is capable of performing other jobs existing in significant numbers in the national economy in view of the claimant's age, education, work experience and residual functional capacity ("RFC"). Id. If there is an affirmative finding at any of steps one, four or five, the claimant will be found "not disabled." 20 C.F.R. § 404.1520(b)-(f). See also Brown v. Yuckert, 482 U.S. 137, 140-42 (1987). The Plaintiff carries the initial burden of demonstrating by medical evidence that he or she is unable to return ot his or her former occupation. Dobrowolsky v. Califano, 606 F.2d 403, 406 (3d Cir. 1979). Once the Plaintiff has done so, the burden shifts to the Commissioner to show the existence of substantial gainful employment the claimant could perform. Id.

The ALJ found Plaintiff not disabled at the fifth step of the above process. The ALJ found that Plaintiff was unable to return to his past relevant work as a cook, but found that he has the

ability to pursue other types of employment. (Findings of Fact 6, 10, R. 24-25). In her findings of fact, the ALJ found that the Plaintiff has the residual functional capacity (RFC) to perform a narrow range of sedentary work. The Plaintiff's ability to perform the full range of sedentary work is limited by his ability to only occasionally perform postural activities, by his need to be able to have the option of sitting or standing to do his work, and by his ability to perform only simple and routine tasks. (R. 22, Findings of Fact 5). Such occupations could include an assembler, an inspector and a cashier. (R. 20-25).

With respect to Plaintiff's treating physician's opinion, the ALJ did not afford Dr. McCoy's determination much weight:

> A treating physician's opinion is usually given great weight if the opinion is supported by clinical and objective medical findings and is not inconsistent with other substantial evidence in the record. In this case the claimant's treating physician's opinion is not supported by clinical and objective medical findings and is inconsistent with other substantial evidence in the record. There is no clinical and objective evidence in the record that would result in a finding of such severe limitations as determined by this treating physician. Accordingly, the claimant's treating physician's opinion regarding the claimant's inability to work has been considered but is not being afforded any significant weight in this decision. (Finding of Fact 5, R. 24).

The ALJ also found that the Plaintiff's statements concerning his impairments and the intensity and duration of his symptoms on his ability to work to be "not entirely credible in light of discrepancies between the claimant's assertions and information contained in the documentary reports and objective medical evidence." (Findings of Fact 5, R. 23). The ALJ noted the discrepancy in the record of when Plaintiff stated he went to the emergency room for the first time. The ALJ also found other facts undermining Plaintiff's case and credibility, such as Plaintiff's statement that a friend did most of his housework even though his friend is disabled, a lack of medical support for the persistency and level of pain Plaintiff described, and the fact that

only conservative treatment was needed and there were no plans for more aggressive treatment such as surgery.  Id.

        A.      The ALJ's Assessment of the Treating Physician's Opinion

The Court of Appeals for the Third Circuit has repeatedly noted that "a cardinal principle guiding disability eligibility determinations is that the ALJ accord treating physicians' reports great weight, especially when their opinions reflect expert judgment based on a continuing observation of the patient's condition over a prolonged period of time." Morales v. Apfel, 225 F.3d 310, 317 (3d Cir. 2000).  See also Plummer v. Apfel, 186 F.3d 422, 429 (3d Cir. 1999) (citing Rocco v. Heckler, 826 F.2d 1348, 1350 (3d Cir. 1987)); 20 C.F.R. 404.1527(d)(2) (providing for controlling weight where treating physician opinion is well-supported by medical evidence and not inconsistent with other substantial evidence in the record).  In fact, a physician's opinions are afford controlling weight if well-supported by diagnostic evidence and not inconsistent with other medical evidence in the record, and it is an error of law to reject the treating physician's opinion without adequate explanation.  20 C.F.R. § 404.1527; Fargnoli v. Massanari, 247 F.3d 34, 43 (3d Cir. 2001).

The treating physician in this case is Dr. Michael McCoy.  Dr. McCoy has regularly treated and examined Plaintiff since a month after his workplace injuries.  The doctor has made referrals to other doctors, ordered various medical tests and physical therapy, and prescribed medications.  (R. 311-316). As discussed, supra, from Plaintiff's bi-weekly office visits with him, Dr. McCoy stated in his report that his prognosis for Plaintiff is guarded.  (R. 136).  He noted, among other things, that Plaintiff can only continuously sit for 20 minutes and continuously stand for 15 minutes.  He stated he can sit for less than two hours at a time and stand for less than two

hours at a time, and would need 15 breaks during an eight hour working day to walk around for at least ten minutes each.

Despite his familiarity with Plaintiff's medical history and injuries, the ALJ quickly dismissed Dr. McCoy's opinion. In justifying this dismissal, the ALJ found there to be "no clinical and objective evidence in the record that would result in a finding of such severe limitations as determined by [Dr. McCoy]." (R. 24). Thus, the ALJ did not give Dr. McCoy's opinion "any significant weight" in making her decision. (R. 24).

This explanation is far from the "adequate explanation" required. While the ALJ briefly summarized various findings of different doctors in Plaintiff's case, she failed to point out which doctors or which medical evaluations are inconsistent with Dr. McCoy's evaluations of and familiarity with the Plaintiff. The ALJ acknowledged that multiple medical reports in the record found Plaintiff to suffer from cervical, thoracic, and lumbar strain and sprain, as well as mild right knee synovitis (R. 19, citing Exhibits 2F, 4F, 5F, 7F and 9F). But she focused instead on a few differences in medical evaluations. For example, the ALJ noted that in a visit with one doctor, Plaintiff was found to have a limited range of motion of his cervical spine, but in another visit two months later, Plaintiff was found to have full range of motion of his cervical spine. (R. 22). The ALJ also relied heavily on the fact that more aggressive treatment is not being pursued (and thus is unwarranted) for Plaintiff's injuries.

While this Court does not discount the fact that two different doctors made different observations of Plaintiff, this fact and other minor discrepancies are not enough to be deemed so inconsistent with the treating physician's diagnosis as to discount the weight of his evaluation. No two people - doctors or otherwise - will make exactly the same observations in the same

situation. Moreover, Plaintiff presumably has less pain or more mobility on some days than he does on others. A doctor who saw Plaintiff on a "good day" would have a slightly different impression of his injuries than one who saw him on a "bad day." Simply because these two doctors would make different observations on different days does not make either of their opinions necessarily inconsistent with that of Dr. McCoy.

Moreover, while these kinds of discrepancies in the record in some cases might be serious enough to discount the weight usually given to the treating physician's opinion, the ALJ did not provide any explanation. The ALJ's conclusion that Dr. McCoy's opinion is "not supported by clinical and objective medical findings and is inconsistent with other substantial evidence in the record" is nothing more than a conclusory statement. No explanations or specific examples are provided from the record indicating what medical evidence the ALJ found to contradict Dr. McCoy's opinion. Such a perfunctory statement regarding the treating physician's opinion is inadequate to satisfy the standard.

B.   The ALJ's Assessment of Plaintiff's Credibility

Credibility determinations regarding a plaintiff's testimony about his or her pain and limitations are decisions within the ALJ's province. Van Horn v. Schweiker, 717 F.2d 871, 871 (3d Cir. 1983). As such, they must be considered as long as they are based on substantial evidence. Richardson v. Perales, 402 U.S. 389, 390 (1971), citing 42 U.S.C. § 405(g). An ALJ must consider a claimant's subjective symptoms, including pain, which may not be discounted if reasonably consistent with a showing of objective medical evidence of a condition that could reasonably produce the symptoms reported. Chrupcala v. Heckler, 829 F.2d 1269, 1275-76 (3d Cir. 1987); 20 C.F.R. § 404.1529. Where medical evidence exists to support a claimant's

subjective complaints, these complaints should be given "great weight."  Mason v. Shalala, 99 F.2d 1058, 1067-68 (3d Cir. 1993); Ferguson v. Schweiker, 765 F.2d 31, 37 (3d Cir. 1985). Therefore, once the claimant has submitted evidence to support subjective claims of disability, an ALJ may not dismiss the evidence simply as "not credible."  Rather, the ALJ must point to contrary medical evidence.  Mason, 99 F.2d at 1067-68; Williams v. Sullivan, 970 F.2d 1178, 1184-85 (3d Cir. 1992).

      Plaintiff testified before the ALJ that he is in a lot of pain.  (R. 322).  As a result of the pain from his physical injuries and the treatment for those injuries, he testified that he has trouble interacting with his children, he has trouble sleeping, he suffers from a loss of appetite, and he has a lack of energy from doing daily tasks, such as household chores.  (R. 320-324).  When he does try accomplishing activities around the house, Plaintiff testified that he needs to take a break after working for 15-20 minutes.  (R. 325).   Dr. McCoy's findings and opinions support Plaintiff's testimony concerning his conditions; in his report, for example, Dr. McCoy stated that the Plaintiff will "often" experience pain or other symptoms severe enough to interfere with attention and concentration. (R. 136-141).  Dr. McCoy's assessment of Plaintiff's ability to sit, stand and walk for only short periods of time further supports Plaintiff's testimony.  As Dr. Young, the vocational expert, testified, if the ALJ were to credit the testimony Plaintiff gave about his functional abilities on a regular basis, Plaintiff would be unable to sustain work at any level.  (R. 341-342).

      The ALJ concluded, however, that "claimant's statements concerning his impairments and the intensity, duration and limiting effects of his symptoms on his ability to work are not entirely credible in light of discrepancies between the claimant's assertions and information contained in

the documentary reports and objective medical evidence." (R. 23).   The ALJ provided multiple examples of Plaintiff's perceived lack of credibility, such as his statements concerning his ability to do housework, the amount of pain Plaintiff experiences from his injuries and lack of supporting medical evidence of such pain, and the fact that Plaintiff's condition does not warrant more aggressive treatment, such as surgery.

Although an ALJ is generally entitled to deference in reaching credibility determinations, an ALJ "may not ignore consistent medical evidence showing disability in favor of their own opinion that there is no disabling impairment." Allen v. Bowen, 881 F.2d 37, 41 (3d Cir. 1989). It is impermissible for an ALJ to reject a claimant's subjective symptoms, which have been credited by a treating physician, based solely on an ALJ's observation of the claimant at the hearing and his or her testimony about his or her ability to take care of his personal needs, perform household chores and participate in activities outside the home. See Frankenfield v. Bowen, 861 F.2d 405, 408 (3d Cir. 1988); Gilliland v. Heckler, 786 F.2d 178, 184 (3d Cir. 1986) (noting an "ALJ may not substitute his personal reaction to Claimant's responses or physical appearance for the opinion of the treating physicians").

The  ALJ does not adequately explain why the medical evidence does not support Plaintiff's statements about his pain and medical condition.  As discussed, supra, Plaintiff's subjective pain and symptoms have been credited by Dr. McCoy, Plaintiff's treating physician. The ALJ notes in her decision that while there is evidence of lumbar disc protrusions, there is no evidence of any herniation, and that "the medical evidence does not include any indication that the claimant's headaches occur as frequently or last as long as described." (R. 23).  Yet the lack of herniation does not necessarily lead to the conclusion that Plaintiff is not disabled, nor does it

serve to undermine Plaintiff's credibility. Indeed, Plaintiff complains of, among other symptoms, pain in his right knee, the cervical and lumbar spines, and frequent, reoccurring headaches. A lack of herniation in the lumbar region does not mean these other symptoms do not persist, as both Plaintiff testified and Dr. McCoy's report indicated they do. Further, Plaintiff's headaches are, in fact, noted throughout the record of medical evidence. Dr. Kabasakalian, a Neurology Resident in the Temple University School of Medicine Department of Neurology, noted that Plaintiff described headaches occurring "episodically and last[ing] for several days at a time and last all day." The headaches were noted as disrupting Plaintiff's sleep. (R. 271). Plaintiff also described his headaches to treating physician Dr. McCoy (R. 151, 153-154), as well as to Dr. Golding (R. 241-242), Dr. Powell (R. 249-251), Dr. Savino (R. 256) and Dr. Kelman (R. 260-261). Thus, multiple medical reports included Plaintiff's symptom of consistent headaches throughout the course of his treatment. The doctors' notation of Plaintiff's headaches, as well as the referral of Plaintiff to Dr. Kabasakalian, a Neurology Resident, provide at least some support for Plaintiff's contentions concerning his headaches. The statement by the ALJ that the "medical evidence does not include any indication that the claimant's headaches occur as frequently or last as long as described" is inaccurate (emphasis added).

    The ALJ also found Plaintiff not to be credible because he is pursuing conservative treatment in his recovery, and not pursuing more aggressive forms of treatment, such as surgery. (R. 23). This fact, however, does not diminish Plaintiff's credibility. In a Social Security Ruling concerning the assessment of the credibility of an individual's statements, it states that an "individual's statements may be less credible if the level or frequency of treatment is inconsistent with the level of complaints." SSR 96-7P, 1996 WL 374186 (S.S.A.) *7. But the Ruling also

states that a "longitudinal medical record demonstrating an individual's attempts to seek medical treatment for pain or other symptoms and to follow that treatment once it is prescribed lends support to an individual's allegations of intense and persistent pain or other symptoms for the purpose of judging the credibility of the individual's statements." Id.  In the present case, Plaintiff has a long record of seeking medical evaluations and advice.  He has seen numerous doctors, as evidenced by over one-hundred pages of medical reports in the Record.  No argument has been made that Plaintiff failed to follow any treatment recommendations once prescribed.  Simply because Plaintiff is not pursuing a course of surgery does not mean that the level or frequency of his treatment is inconsistent with his complaints of pain and other symptoms.  Indeed, if anything, the frequency of his treatment and his visits with various doctors in a number of fields lends support to Plaintiff's testimony of pain and persistent symptoms.

Finally, the fact that Plaintiff is unable to do some chores that a disabled friend, Heather Mills, is able to complete for him has no bearing on Plaintiff's credibility concerning his own disability.  While this friend did not testify before the Court, it is noted in Plaintiff's testimony that his friend has a mental disability, while Plaintiff suffers from physical injuries that have had some mental side effects. (R. 303).  Simply because one person, disabled or otherwise, is able to complete a task does not mean that another person could do the same.  Plaintiff's testimony concerning household chores is simply not enough to undermine Plaintiff's credibility entirely. Frankenfield, supra, at 408.

For all of the above reasons, the Court concludes that the ALJ's determination that Plaintiff's statements and testimony were not fully credible is not supported by substantial evidence in the record.

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| GERALD WILSON | : | CIVIL ACTION |
| v. | : | |
| MICHAEL J. ASTRUE,<br>COMMISSIONER OF SOCIAL SECURITY | : | NO. 07-cv-0019 |

**<u>ORDER</u>**

AND NOW, this 28th day of November, 2007, upon careful and independent consideration of Plaintiff Gerald Wilson's Motion for Request for Review, and review of the record, it is hereby ORDERED that:

(1)   Plaintiff's Motion (Doc No. 8) is GRANTED;

(2)   The case is remanded for further administrative proceedings not inconsistent with this opinion pursuant to the fourth sentence of 42 U.S.C. § 405(g).

(3)   The clerk shall marked this case CLOSED for statistical purposes.

BY THE COURT:

/s/ Michael M. Baylson
_____
Michael M. Baylson, U.S.D.J.

O:\CIVIL 07\07-cv-0019 Wilson v. Astrue\Wilson Memo.wpd

-17-